UNITED STATES, Appellee

v

THEODORE V. WANNENWETSCH, Acting Sergeant, U. S. Marine Corps, Appellant

12 USCMA 64, 30 CMR 64

No. 14,217

Decided December 16, 1960

 
 █ 

*Lieutenant Commander John S. Lane,* USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Frederick A. Cone,* USNR.

*Major Elvin R. Coon, Jr.,* USMC, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Martin Drobac,* USNR.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

A general court-martial found the accused guilty of conspiracy to commit housebreaking, housebreaking, and larceny of merchandise belonging to a Post Exchange, in violation of Articles 81, 130, and 121, Uniform Code of Military Justice, 10 USC §§ 881, 930, and 921, respectively. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, to be confined at hard labor for two years, and to be reduced to the grade of private. The convening authority affirmed only so much of the sentence as provided for a bad-conduct discharge, confinement at hard labor for eighteen months, total forfeitures, and reduction. A divided board of review affirmed the conviction but modified the sentence so that confinement was reduced to nine months. The Judge Advocate General of the Navy thereupon certified the record to this Court under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, for a determination of the question whether the law officer erred in permitting cross-examination of the accused on the merits of the offenses. The accused also petitioned for grant of review, and we permitted argument on two additional questions; namely, did the law officer err when he failed to warn the accused of the risk he assumed in becoming a witness in his own behalf, and did the same functionary err in denying the defense motion for a mistrial?

There is no dispute about the facts of the substantive offenses, and they support adequately the findings of the court-martial. However, for the purpose of framing the issue to the evidence, we state them generally. The accused and an accomplice planned jointly to burglarize the Post Exchange. The original night selected was not appropriate as the business was apparently closed for inventory on the chosen date, but the next evening the offenders carried out their plan. The accomplice was a lookout and the accused broke into the building and stole the alleged property. He was subsequently apprehended, a legal search was made of his locker and the stolen items recovered. Thereafter, he voluntarily made a full confession of his participation in the crimes.

His defense was that he was suffering from a mental condition which rendered him not responsible for the offenses and mentally incapable of forming the specific intents involved in the crimes. To support his claim he called certain witnesses who testified as to his bizarre conduct immediately prior to the commission of the offenses. In addition, other witnesses testified that during and immediately after his apprehension he attempted suicide. It was in connection with the introduction of this latter testimony that the question which concerns us was presented. Apparently the accused wrote two notes which indicated suicidal tendencies. One was identified by a witness who was searching for him and, as the two approached closely together the accused stated, "I've got to go now," plunged a knife between his ribs, and handed the note to the witness. The second suicide note was written at another time and when it was shown to the witness he admitted that he was confused in his identification as to which of the two had been passed to him. Originally he identified one, and this was admitted in evidence, but thereafter he changed his testimony and identified the second note as the one he

**65**

received from the accused. The last-mentioned letter was thereupon admitted in evidence, and trial counsel moved to strike the first document on the grounds that no proper foundation had been laid for its admission. Defense counsel thereupon requested that the law officer delay his ruling until such time as a proper foundation was established to qualify the document for admission into evidence.

In order to get the questioned letter into the record, defense counsel called the accused as a witness. He announced that the testimony would be limited to laying a foundation for the introduction of the document. When he made that explanation, the law officer replied:

"LO: Just a minute. Before he takes the stand, it occurs to me that there may well be some questions arise as to the extent of cross-examination. I don't know what they might be or the answers at this time.

"IC: Well, we can take care of that when the question comes up. We are only putting the accused on the stand for the limited purpose of testifying as to the authenticity of Defense Exhibit 'B'."

Thereupon, the accused was sworn as a witness and testified that the letter was a statement that he had written. After it was composed he inserted it in an envelope and placed it in his locker box on the night preceding the day of the attempted suicide. This testimony cleared up the foundational deficiency and the motion to strike was denied.

When the accused had finished his direct testimony, trial counsel proceeded with his cross-examination. His questions went beyond the foundational base and entered into the area of the guilt or innocence of the accused. Generally, the interrogation required the accused to furnish testimony which corroborated the evidence contained in the pretrial confession. Defense counsel objected to the cross-examination upon the ground that it went beyond the scope of direct examination. Trial counsel replied that the accused had testified on the merits and that he thereby opened the door to cross-examination. The law officer preferred to research the authorities and, after doing so, overruled the objection and permitted the cross-examination to continue. Defense counsel requested that the defense be informed of the limits of the cross-examination, and the law officer announced that the area, apart from credibility, would embrace questions touching on accused's capacity to form either a general or specific criminal intent as they were brought in issue by accused's defense of mental irresponsibility.

There seems to be little dispute concerning the law touching upon the issue, and a few general principles will lead us to the crux of this problem. In military law, the rule is stated in paragraph 149b, Manual for Courts-Martial, United States, 1951, which provides as follows:

"An accused person who voluntarily testifies as a witness becomes subject to cross-examination upon the issues concerning which he has testified and upon the question of his credibility. So far as the latitude of the cross-examination is discretionary with the court, a greater latitude may be allowed in his cross-examination than in that of other witnesses. When the accused voluntarily testifies about an offense for which he is being tried, as when he voluntarily testifies in denial or explanation of such an offense, he thereby, with respect to cross-examination concerning that offense, waives the privilege against self-incrimination, and any matter relevant to the issue of his guilt or innocence of such offense is properly the subject of cross-examination. When an accused is on trial for a number of offenses and on direct examination has testified about only one or some of them, he may not be cross-examined with respect to the offense or offenses about which he has not testified. If the accused testifies on direct examination only as to matters not

bearing upon the issue of his guilt or innocence of any offense for which he is being tried, he may not be cross-examined on the issue of his guilt or innocence. Thus, if an accused testifies on direct examination only as to the involuntary nature of his confession or admission, he may not be asked on cross-examination to state whether his confession or admission was true or false, for such a question would go to the issue of his guilt or innocence, concerning which he has not testified."

The parties agree that the above-quoted paragraph states the principle of law generally recognized in the civilian jurisdictions. However, they divide on whether the accused testified about the offenses for which he was being tried or whether his evidence was limited to a preliminary matter which was not concerned with guilt or innocence. So too did members of the board of review disagree, for a majority of the board held that the accused had opened up the subject of his guilt or innocence, while the dissenting member rationalized that the testimony was limited to laying a foundation for the admission of the document and that cross-examination could not go beyond that narrow area. We believe the answer to the question is supplied properly by the majority opinion.

It is true the accused's testimony dealt largely with qualifying a document for admission into evidence but the result was to make an out-of-court statement of the accused direct evidence of his mental condition at the time he offended. While the contents were self-serving, they were relevant testimony on his defense because they tended to prove that he was mentally disturbed at the time he committed the crimes. Once the accused sought to bolster his defense from the witness stand he became a witness for the purpose of establishing his lack of criminal intent. Indeed, unless the letter had some relevancy for that purpose, it would be incompetent as it would be merely a self-serving declaration and would permit him to get his testi-mony on an essential element of the offense before the court-martial without being subject to cross-examination.

When an accused takes the stand in his own behalf, he does so as any other witness, and within the limits of appropriate principles, he may be cross-examined as to any facts he puts in dispute. Here, the accused placed his mental responsibility in issue and thus trial counsel was within his rights to develop testimony which rebutted, was inconsistent with, or raised doubts about the testimony offered by the accused. The cross-examination went directly into that area as trial counsel asked specific questions as to the accused's activity prior to, during, and after the commission of the offenses. The answers tended to establish that the accused understood the nature and criminality of his act, that his mind was functioning normally and to the extent that he could relate minute details concerning his activities over a relevant period of time. From the answers elicited, the court-martial was furnished guideposts to aid the members in weighing accused's contention that his mental condition was such that he was legally irresponsible for the crimes.

The dissenting member of the board of review, in supporting his position, equated this accused to a person who testifies in support of a contention that his pretrial statement was involuntary. Obviously, when the latter situation prevails, an accused is subject to cross-examination only on the facts tending to show voluntariness or involuntariness. That however is not the situation in the case at hand. Here the accused was not seeking to keep adverse evidence out of the record, he was seeking to bring before the court-martial testimony which would and did rebut the prosecution's evidence on intent. In the former instance, the testimony of an accused does not reach the merits but in the case at bar the contrary is true. Here the accused voluntarily and definitely introduced evidence which would have an impact on his guilt or innocence.

**67**

It was that evidence which trial counsel rightly sought to weaken. Accordingly, we conclude the law officer ruled correctly on the main issue.

The two subsidiary issues upon which the Court permitted argument are answered substantially by our previous holding. However, a few observations are in order, and the questions may be consolidated for disposition as one necessarily merges with the other. The accused was represented, in addition to certified military counsel, by his individually retained attorney, who possessed the qualifications enumerated in Article 27 (b), Uniform Code of Military Justice, 10 USC § 827, and who had prior service as an Air Force officer with duties primarily concerned with military justice. When accused was sworn as a witness, the law officer announced that he had some reservations about the extent of cross-examination. He was informed that the defense would take care of that matter when it arose. It was not long in coming.

Obviously, if we are correct in our previous discussion that the letter was testimony of the accused touching on his mental irresponsibility, then the cross-examination did not exceed the scope of the direct examination. However, accused goes one step further and argues that assuming he had opened the door on the merits, the law officer was legally bound to inform him of any risk he assumed before he testified. We do not concur in that contention. Accused was represented by civilian and military counsel and they must take the responsibility for error if we assume that one exists.

The law officer called defense counsel's attention to the possibility of the accused being subject to cross-examination, and so the argument that the defense was uninformed is without merit. Specifically, they were apprised that the accused was treading upon dangerous ground and legally qualified counsel retorted that they would take care of that matter at the appropriate time. It is too late now to contend they made a poor choice or that they did not know the law.

One other matter bears comment. In connection with one question asked on cross-examination, the accused claimed his right against self-incrimination. The question was relevant to the crime in dispute and, when an accused takes the stand, the immunity against self-incrimination is one which he may waive. Once he testifies on the guilt or innocence of a particular offense, his waiver is not partial, it is complete insofar as the particular crime is concerned. He may retain his privilege as to other offenses—an issue we need not discuss—but he cannot claim it as to the particular offense about which he is testifying. Here his claim was asserted to a question which shed light on accused's claim of legal insanity.

For the above-stated reasons, the certified question is answered in the negative and the assigned errors are decided adversely to the accused. The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.